United States District Court
Southern District of Texas
FILED

MAY 0 2 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISAIAS TOSCANO-GIL,                |
                                   |
v.                                 |        CA B-02-084
                                   |
E.M. TROMINSKI,                    |
  INS DISTRICT DIRECTOR.           |
_____

POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, through the undersigned, respectfully files the instant
Points and Authorities, in support of his Petition for Writ of
Habeas Corpus, which Petition challenges 1) an administratively
final order of exclusion and deportation, issued April 22, 2002, by
the Board of Immigration Appeals, ("BIA") (Petitioner's Exhibit A),
and 2) INS' decision to revoke its agreement that he be allowed to
remain in the U.S. pending a decision by the BIA on INS' appeals
from the order of Immigration Judge David Ayala, granting
adjustment of status to his wife and children, (Petitioner's
Exhibit C, and Exhibit F, herein incorporated by reference).

I.   JURISDICTION AND SCOPE OF REVIEW

Jurisdiction herein is laid under 28 U.S.C. §2241.  Mr. Toscano is
under an administratively final order of exclusion and deportation.
(Exhibit A).  He is also in parole status, under an Order of
Supervision, which were issued on November 28, 2000, for the stated
purpose of permitting Mr. Toscano to remain in the U.S. with his
wife and children until the BIA issued a decision on INS' appeal
from the Immigration Judge's order, granting their applications for
adjustment of status.  When the Board issued is decision of April
22, 2002, Respondents refused to renew said parole and supervision

order. After the instant action was filed and served on Respondent Trominski, they relented, and extended it to April 26, 2003, on the basis of the pending petition.  But Petitioner continues to be under travel and reporting restrictions, not shared by the populace at large.  (Petitioner's Exhibit D, incorporated by reference).

## II.  THE FACTS AND PROCEDURAL HISTORY

In 1996, Mr. Toscano, a lawful permanent resident, was stopped at the international bridge when marijuana was discovered in the gas tank of his vehicle.  He ultimately pled guilty to possession of marijuana, for which he received five years probation, (which probation he successfully completed).  Exclusion proceedings followed, in which an Immigration Judge granted his application for §212(c) relief. INS appealed, and on May 19, 1998, in a two-to-one decision citing, *inter alia, Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988) (Rehabilitation is a favorable consideration in evaluating a discretionary, §212(c) application, and will ordinarily be required where a serious drug offense is involved), the BIA reversed the IJ, and ordered him excluded and deported.

Mr. Toscano filed a petition for habeas corpus, CA B-98-79.  This Court, Hon. Hilda Tagle, presiding, concluded that the BIA had erred in the manner in which it reached its decision, and granted his petition. INS appealed, challenging, *inter alia,* the Court's characterization of the errors as Due Process violations. The Fifth Circuit sustained INS' appeal, concluding that the errors made by the Board were not Due Process violations, and that Mr. Toscano did not show that, but for those errors, he would have been granted relief.  *Toscano-Gil v. Trominski*, 210 F.3d 470 (5th Cir. 2000).

Then, on December 21, 2001, "in light of [this] Court's findings,

and upon further review of the record," the BIA *sua sponte* reconsidered its prior denial of relief, and concluded as follows:

> [W]e conclude that there is no adequate basis for overturning the Immigration Judge's grant of discretionary relief. We note in particular the respondent's very long residence in this country, and the fact that he has only one conviction, and was sentenced only to probation for that offense.

(Petitioner's Exhibit E, incorporated by reference, Tab 1). The BIA dismissed INS' appeal, thereby reinstating the Immigration Judge's grant of §212(c) relief, and Mr. Toscano's LPR status. *Id.*

INS filed a motion to reconsider, based solely on the fact that Judge Tagle's decision had been vacated by the Fifth Circuit. (*Id.*, Tab 2). Mr. Toscano opposed the motion, arguing, *inter alia,* that the finding that Mr. Toscano merited discretionary relief mooted the rationale of the Fifth Circuit that he had not made such a showing. He further noted that the BIA had jurisdiction to reconsider its prior decision *sua sponte*. (*Id.* at Tabs 3 and 6).

INS requested that the BIA "disregard" Petitioner's claims. (*Id.* at Tabs 4 and 5). Notably, INS never argued that the BIA's finding that Mr. Toscano merited relief was erroneous. Nonetheless, on April 22, 2002, the BIA issued its most recent decision, again reversing itself. The BIA never mentioned Mr. Toscano's arguments in opposition to INS' motion to reconsider. In fact, the decision does not even indicate that the BIA panel members had his pleadings in hand when the decision was made. (*Id.* at Tab 7). [1]

---

[1]    Because the Immigration Judges and BIA do not maintain "docket sheets," the Board has a long, and continuing history, of overlooking properly filed pleadings. *See, e.g., Molina v. Sewell,*

3

### III.  CAUSES OF ACTION

#### A.  THE BIA'S DECISION OF APRIL 22, 2002
#### VIOLATES DUE PROCESS, TO PETITIONER'S SUBSTANTIAL PREJUDICE

On December 21, 2001, the BIA validly exercised its power to reconsider, *sua sponte*, its 1998 decision, and granted §212(c) relief. *See*, 8 C.F.R. §3.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."). INS sought, and the BIA granted, reconsideration of this decision. But the BIA's Order of April 22, 2002, gave no consideration to Toscano's arguments in opposition to INS' motion.

It is unknown whether the BIA misplaced Mr. Toscano's pleadings, or whether it complied with INS' request to "disregard" those pleadings. In either event, by giving *no* consideration to Mr. Toscano's arguments, the Board wholly prevented him from presenting his case. Under the rationale of *Toscano-Gil v. Trominski, supra*, this constitutes a clear violation of Due Process. *Id.* at 474:

> The claimed bases for due process violations, however, do not rise to that level. ...
> ...
> First, Toscano was not denied the opportunity to be heard or present evidence. See Molina v. Sewell, 983 F.2d 676, 680 (5th Cir.1993) (alien not given opportunity to put on evidence established requisite prejudice); Chike v. INS, 948 F.2d 961, 962 (5th Cir.1991) (alien not given notice

983 F.2d 676 (5th Cir. 1993) (BIA abused its discretion in relying on INS' statements regarding facts not in evidence, while failing to consider affidavits submitted by alien). Most recently, on March 22, 2202 the BIA summarily dismissed an appeal for failure to file a brief, although the brief had in fact been timely filed. *Matter of Medina-Rostran, et al*, A77 694 433, 434, and 435. To avoid burdening the record, Mr. Toscano will not submit documentation proving this fact, unless it is challenged by Respondents.

4

of briefing schedule denied opportunity to be heard).

Second, and needless to say, a factual error is not a due process violation. In any event, the critical factor was the marijuana conviction (classified by the BIA as a "serious criminal act"), not the erroneous statement about a conviction for the DWI arrest.

Third, the BIA gave full consideration to the evidence presented and to the equities. It decided that the "equities [do not] outweigh the adverse factors".

Finally, concerning BIA precedent, the BIA majority cited the primary cases, Matter of Burbano and Matter of Marin, relied on by the dissent. In this instance, the majority and dissent simply disagree over the application of BIA precedent. Obviously, that is not a due process denial.

For the same reasons that Mr. Toscano's challenge to the initial BIA decision failed, the present one must succeed. There, the BIA found, albeit by a flawed process, that "the equities [did not] outweigh the adverse factors," and that he did not deserve relief.

But on December 21, 2001, the BIA concluded, *sua sponte*, that they had been wrong in 1998, and that he **did** merit relief. Then, on April 22, 2002, they vacated that decision, not because they found it to be erroneous, but simply because the Fifth Circuit had upheld the 1998 denial of relief. But in upholding that denial, the Court did not conclude that it was "correct." Rather, the Court found only that Mr. Toscano did not show that the manner in which it was reached violated Due Process. There is no inconsistency between the Fifth Circuit's holding, and the BIA's later finding that it had been wrong on the merits, and that Mr. Toscano did deserve relief. So the simple existence of the Fifth Circuit's decision did not require the BIA to vacate its finding that he merits relief.

Second, in sustaining the Board's initial denial of relief, the Fifth Circuit noted that "the critical factor was the marijuana

conviction (classified by the BIA as a 'serious criminal act'), not the erroneous statement about a conviction for the DWI arrest." On December 21, 2001, the BIA found that the initial denial was incorrect. In so doing, they relied on Mr. Toscano's "very long residence in this country, and the fact that he has only one conviction, and was sentenced only to probation for that offense." (Exhibit "B"). Again, in *Toscano-Gil*, the Fifth Circuit held only that there was no Due Process violation in the manner in which the BIA reached the initial decision, not that said decision was necessarily "correct." It remained within the province of the BIA to reconsider its prior decision, *sua sponte*. 8 C.F.R. §3.2(a). *See also, Matter of Beckford*, I.D. 3425 (BIA 2000); and *Matter of J-J-* 21 I&N Dec. 976 (BIA 1997) (BIA retains power to reconsider or reopen proceedings on its own motion).

Although *Beckford* and *J-J-* purport to set forth the circumstances under which said power is to be exercised, INS' never argued that these circumstances were not met. (Exhibit E, Tabs 2, 4 and 5). Nor did the BIA invoke its self-imposed limitations as the reason for granting INS' motion. Rather, the BIA accepted INS' claim that the mere existence of the Fifth Circuit's decision mandated that the December 21, 2001 order be withdrawn. (Exhibit E, Tab 7). Under 8 C.F.R. §3.2(a), this is incorrect as a matter of law.

Third, the BIA granted reconsideration without mentioning, much less considering, Mr. Toscano's arguments, (Exhibit E, Tabs 3 and 6), that the BIA had the power to reconsider its earlier decision, regardless of the fact that it had been sustained by the Fifth Circuit, and, that having found that he merited such relief, the mere existence of the Fifth Circuit's decision was insufficient grounds for rescinding the grant of relief. Under the reasoning of

6

the Fifth Circuit in *Toscano-Gil* itself, this **does** constitute a Due Process violation.  As the Court reasoned therein, *id*. at 474:

> Toscano was not denied the opportunity to be heard or present evidence.  See Molina v. Sewell, 983 F.2d 676, 680 (5th Cir.1993) (alien not given opportunity to put on evidence established requisite prejudice); Chike v. INS, 948 F.2d 961, 962 (5th Cir.1991) (alien not given notice of briefing schedule denied opportunity to be heard).

Here, it cannot even be determined whether the decision-maker had Mr. Toscano's pleadings in hand when the decision was issued. *See also, Opie v. INS*, 66 F.3d 737, 740 (5th Cir. 1995) (Although the BIA need not "write an exegesis on every contention ... its opinion must reflect that it has heard and thought and not merely reacted."

Therefore, it cannot be said, as in the *Toscano-Gil* decision, that "the BIA gave full consideration to the evidence presented and to the equities," much less that the Board "decided that the 'equities [do not] outweigh the adverse factors.'"  In fact, the opposite occurred.  The Board decided that the equities **did** outweigh the adverse factors.  In its decision of December 21, 2001, the BIA found that he merits §212(c) relief in the exercise of discretion, and **did not vacate that finding** in the decision of April 22, 2002, when it granted INS' motion to reconsider, and reinstated the 1998 order of exclusion and deportation.  Thus, virtually by definition, Mr. Toscano has shown "substantial prejudice."

### B.  CHALLENGE TO INS' ARBITRARY REVERSAL OF ITS DECISION TO ALLOW PETITIONER TO REMAIN IN THE UNITED STATES WHILE INS' APPEAL IN HIS FAMILY'S CASES IS PENDING

While Mr. Toscano's case was pending at the Fifth Circuit, Immigration Judge David Ayala granted adjustment of status (permanent resident status) to his wife and children. (Exhibit F,

incorporated by reference).[2]   INS appealed, which appeal is still
pending at the BIA.  After the Fifth Circuit's decision in *Toscano-
Gil, supra,* Mr. Toscano requested that he be allowed to remain in
the United States, under an Order of Supervision, while the cases
of his children were pending.  INS agreed.  (Exhibit C).

That agreement constituted a valid exercise of INS' discretion.  To
suddenly withdraw it, on the basis of the BIA's decision of April
22, 2002, was completely irrational.  The Order of Supervision was
issued before the BIA's *sua sponte* decision in December, 2001, to
grant §212(c) relief. It was based on his family's situation, which
has not changed.  The only thing that changed is the BIA's grant,
and subsequent retraction, of relief to Mr. Toscano himself. Not
only did said decision have no bearing on the reasons why he was
allowed to remain in the first place, but he now has a strong claim
of right to be here, quite independently of the cases of his wife
and children.  Mr. Toscano therefore urges that it was a manifest
abuse of discretion for Respondents to change their institutional
mind, without warning or reason, and suddenly declare that they
would not renew his Order of Supervision, or extend his parole.

Although INS ultimately extended Mr. Toscano's stay, based on the
filing of the instant petition, this does not moot the issue.  INS
has shown that it is capable of making wholly arbitrary decisions
regarding Mr. Toscano's situation, without notice or warning. [3]

---

[2]   Judge Ayala is not the same Judge who initially granted Mr.
Toscano's application for §212(c) relief.

[3]   *See, U.S. v. Brown,* 250 F.3d 907,913 n.8 (5th Cir. 2001)
(case not moot if challenged action is capable of repetition but
evading review). *See also, Sierra Club v. Glickman,* 156 F.3d
606,620 (5th Cir. 1998) (the exception to the mootness doctrine
that a controversy is capable of repetition but evading review "is

Although 8 U.S.C. §1252(a)(B)(ii) purports to deprive the federal courts of jurisdiction over virtually all of INS' discretionary decisions, as seen by *INS v. St. Cyr, supra,* this bar does not apply to habeas corpus actions, under 28 U.S.C. §2241. *See also, Jama v. INS,* 2002 WL 507046 (D.Minn. March 31, 2002) (Under *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), District Court has jurisdiction in habeas corpus, 28 U.S.C. §2241, to stay execution of removal order, notwithstanding 8 U.S.C. §1252(g)). Further, habeas jurisdiction covers "manifest" abuses of discretion, such as occurred herein. *See, Kwock Jan Fat v. White,* 253 U.S. 454, 457-458 (1920), wherein the Supreme Court granted certiorai, and remanded for a hearing on the merits of a habeas corpus petition contesting an exclusion order. *Id.,* (internal citations omitted) (emphasis added):

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, **unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers** by the statute,... or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' .... The decision must be after a hearing in good faith, however summary, ... and it must find adequate support in the evidence, ...

WHEREFORE, it is urged that the decision of the BIA dated April 22, 2002 be vacated, and the case remanded to the Board with instructions that it consider the arguments made by Mr. Toscano in opposition to INS' motion to reconsider. The failure to consider

―――――――――――――――

designed to protect plaintiffs; it is not designed to protect defendants from the possibility of future lawsuits.").

Mr. Toscano's pleadings constituted a manifest abuse of discretion, and violated Due Process. Mr. Toscano also suffered substantial prejudice as a result thereof, in that the BIA had already found that he merited relief, and did not retract that finding.

It is further urged that Respondents' decision to revoke its agreement to permit Mr. Toscano to remain in the United States pending a decision on INS' appeal from the decision of Immigration Ayala, granting adjustment of status to his wife and children, be vacated.  It also constitutes a "manifest abuse" of discretion.

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
Fed. I.D. 1178
Texas Bar No. 03052800

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with Exhibits, was personally delivered to the Office of the Lisa Putnam, SAUSA, 1709 Zoy, Harlingen, Texas, this 29th day of April, 2002.

10

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISAIAS TOSCANO-GIL,            |
                              |
v.                            |        CA B-02-084
                              |
E.M. TROMINSKI,               |
  INS DISTRICT DIRECTOR.       |
————————————————————————————————

EXHIBIT "D" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
WITH INCORPORATED POINTS AND AUTHORITIES

**U.S. Department of Justice**
Immigration and Naturalization Service

# Order of Supervision

File No.   **A91 229 833**

Date:   **November 28, 2000**

Name:   **Gil Toscano Isaias**

On:   April 20, 2000   , you were ordered:

☒   Excluded or deported pursuant to proceedings commenced pr to April 1, 1997.

☐   Removed pursuant to proceedings commenced on or a⸱⸱ ⸱il 1, 1997.

Because the Service has not effected your deportation or removal durg the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the followi; conditions:

☒   That you appear in person at the time and place specified, upon ich and every request of the Service, for identification and for deportation or removal.

☒   That upon request of the Service, you appear for medical or psychiatric examination at the expense of the United States Government.

☒   That you provide information under oath about you nationality; circumstances, habits, associations, and activities and such other information as the Service considers appropriate.

☒   That you do not travel outside   HARLINGEN DISTRICT   for more than 48 hours without first
(Specify geographic limit if any)
having notified this office of such move of such proposed travel.

☒   That you furnish written notice to this Service office of any change of residence or employment within 48 hours of such change.

☒   That you report in person on the   first Wednesday   day of   sixth month   to this Service office at:
2102 Teege Ave., Harlingen, Texas   (Deportation Section)   DO
unless you are granted written permission to report on another date.

☒   That you assist the Immigration and Naturalization Service in obtaining any necessary travel documents.

☒   Other:   **That you notify this office  immediately upon reipt of a decision on your family's cases which are pending before the Board of Immigration Appeals: ( A7228 473; A76 228 474; A76 228 475; A76 228 476; A76 228 477)**

☐   See attached sheet containing other specified conditions continue on separate sheet if required

(Signature of INS official)

**Refugio Huerta, Deportation Officer**
(Print name and title of INS official)

## Alien's Acknowledgement of Conditions Release under an Order of Supervision

I hereby acknowledge that I have (read) (had interpreted and explained to me in the   English   language) the contents of this order, a copy of which has been given to me. I understand that failure to comply with the terms of his order may subject me to a fine, detention, or prosecution.

(Signature of INS Official Serving Order)

(Signature of Alien)     11-28-00
(Date)

Form I-220B(Rev.4/1/97)N

PAROLED IC
MAY 28, 2001
Pending Decision By
BIA on Family
Cases
(SEE I-220B issued)
11-28-00
Refugio DAPIHLG.

## Order of Supervision

File No.   A91 229 833

Date:   November 28, 2000

**1 Family Name**
TOSCANO ISAIAS

**2 First (Given) Name**
GIL

**3 Birth Date (Day-Mo.-Yr)**
06.07.55

**4 Country of Citizenship**
MEXICO

**5 Sex (Male or Female)**
MALE

**6 Passport Number**
A91 229 833

**7 Airline and Flight Number**

**8 Country Where You Live**

**9 City Where You Boarded**

**10 City Where Visa Was Issued**

**11 Date Issued (Day-Mo.-Yr)**

**12 Address While in the United States (Number and Street)**
500 EISENHOWER AVE APT # 180

**13 City and State**
METAIRE LA 70003

... r to April 1, 1997.

... 1, 1997.

... g the period prescribed by law, it is ordered that you be placed
... conditions:

... ch and every request of the Service, for identification and for

... chiatric examination at the expense of the United States

☒ That you provide information under oath about you nationality, circumstances, habits, associations, and activities and such other information as the Service considers appropriate.

☒ That you do not travel outside   HARLINGEN DISTRICT   for more than 48 hours without first
(Specify geographic limits if any)

☒ That you furnish written notice to this Service office of any change of residence or employment within 48 hours of such change.

☒ That you report in person on the   first Wednesday   day of   sixth month   to this Service office at:
2102 Teege Ave., Harlingen, Texas  (Deportation Section) DOS
unless you are granted written permission to report on another date.

☒ That you assist the Immigration and Naturalization Service in obtaining any necessary travel documents.

☒ Other:   **That you notify this office  immediately upon reipt of a decision on your family's cases which are pending before the Board of Immigration Appeals: ( A7228 473; A76 228 474; A76 228 475; A76 228 476; A76 228 477)**

☐ See attached sheet ...

(Signature of INS official)

**Refugio Huerta, Deportation Officer**
(Print name and title of INS official)

### Alien's Acknowledgement of Conditions Release under an Order of Supervision

I hereby acknowledge that I have (read) (had interpreted and explained to me in the   English   language) the contents of this order, a copy of which has been given to me. I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution.

(Signature of INS Official Serving Order)

(Signature of Alien)   11-28-00   (Date)

Form I-220B(Rev.4/1/97)N



18. Occupation

19. Waivers

20. INS File  A-01-229-833

21. INS FCO  HLG

22. Petition Number

23. Program Number  HLG

24. ☐ Bond

25. ☐ Prospective Student

26. Itinerary / Comments  ORDER OF SUPERVISION #220B
TO AUG 26, 2001 — HLG PLLG 001/HLG
EXTENDED TO MAY 2, 2002 PHLG PLLG 001/HLG
EXTENDED TO April 12 2003 HLG GUARDIAN
HLG/DB GUARDIAN

27 TWOV Ticket Number

---

U.S. Department of Justice
Immigration and Naturalization Service

Name:  Gil Toscano Isaias          , you were ordered:

On:  April 20, 2000

☐ Removed pursuant to proceedings commenced on or after April 1, 1997.

☒ Excluded or deported pursuant to proceedings commenced prior to April 1, 1997.

Because the Service has not effected your deportation or removal during the period prescribed by law, it is ordered that you are to be released from custody under supervision and permitted to be at large under the following conditions:

☒ That you appear in person at the time and place specified, upon each and every request of the Service, for identification and for deportation or removal.

☒ That upon request of the Service, you appear for medical or psychiatric examination at the expense of the United States Government.

☒ That you provide information under oath about your nationality, circumstances, habits, associations, and activities and other information as the Service considers appropriate.

☐ That you do not travel outside _____ HARLINGEN DISTRICT _____ (Specify geographic limits of travel) _____ for more than _____ without first having notified this Service office of any change of residence.

☒ That you report in person on the _____ first Wednesday _____ day of _____ sixth _____ to this Service office at (Deportation Section) DO
2112 Teege Ave. Harlingen, Texas

☒ That you furnish written notice to this Service office of any change of residence.

☒ That you assist the immigration and Naturalization Service in obtaining any travel documents necessary for your departure, unless you are granted written permission to report on another date.

☒ Other:  **That you notify this office immediately upon the final decision before the Board of Immigration Appeals (I-286, Rev. 4/77)**

☐ See attached sheet

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


ISAIAS TOSCANO-GIL,                |
                                   |
v.                                 |        CA B-02-084
                                   |
E.M. TROMINSKI,                    |
  INS DISTRICT DIRECTOR.           |
_____|


EXHIBIT "E" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
WITH INCORPORATED POINTS AND AUTHORITIES

PERTINENT PORTIONS OF RECORD OF PROCEEDINGS


TAB                         DOCUMENT

1.    BIA Decision of December 21, 2001  (*See also*, Exhibit B).

2.    Immigration and Naturalization Service Motion to Reconsider;

3.    Respondent's Opposition to INS' Motion to Reconsider;

4.    [INS'] Motion to Accept Reply Brief;

5.    [INS'] Reply Brief to Respondent's Opposition to INS' Motion
      to Reconsider;

6.    Respondent's Opposition to INS' Motion To Accept Reply Brief,
      And To INS' Request that the Board "Disregard" Respondent's
      Opposition To INS' Motion To Reconsider, and

7.    BIA's Decision of April 22, 2002  (*See also,* Exhibit A).

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A91 229 833 - Port Isabel

Date:                    DEC 21 2001

In re: ISAIAS TOSCANO-GIL

IN EXCLUSION PROCEEDINGS

APPEAL

ON BEHALF OF APPLICANT:    Thelma O. Garcia, Esquire

ON BEHALF OF SERVICE:    William W. Kummings
                         Appellate Counsel

EXCLUDABLE:    Sec.    212(a)(2)(C), I&N Act [8 U.S.C. § 1182(a)(2)(C)] -
                       Controlled substance trafficker

APPLICATION:  Section 212(c) waiver

EXHIBIT 1

ORDER:

    PER CURIAM.  This case was last before us on May 19, 1998, when the Board sustained the Immigration and Naturalization Service appeal from an Immigration Judge's decision granting the applicant's application for relief under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), in the exercise of discretion.  On December 4, 1998, the United States District Court for the Southern District of Texas granted the applicant's petition for habeas corpus, vacated our decision in the case, and remanded the matter to us for further proceedings.  The court found that the Board had not adequately or correctly assessed the facts of the case, and had not considered the Immigration Judge's finding with regard to rehabilitation.

    In light of the court's findings, and upon further review of the record, we conclude that there is no adequate basis for overturning the Immigration Judge's decision granting discretionary relief. We note in particular the respondent's very long residence in this country, and the fact that he has only one conviction, and was sentenced only to probation for that offense.  Accordingly, the Service appeal from the Immigration Judge's January 24, 1997, decision in this case is hereby dismissed.

_____
FOR THE BOARD

LISA M. PUTNAM
ASSISTANT DISTRICT COUNSEL
HARLINGEN DISTRICT OFFICE
P.O. BOX 1711
HARLINGEN, TEXAS  78551

**NOT DETAINED**



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

IN THE MATTER OF:                  )
                                   )
ISAIAS TOSCANO-GIL                 )      FILE NO.:  A91 229 833
                                   )
IN EXCLUSION PROCEEDINGS           )
———————————————————————————————————)



JAN 11 2001

IMMIGRATION AND NATURALIZATION SERVICE
MOTION TO RECONSIDER

This case was last before the Board on December 21, 2001, when the Board of Immigration Appeals ("Board") issued a decision ordering dismissing the Immigration and Naturalization Service's ("Service") appeal of immigration judge's grant of the applicant's application for relief pursuant to §212(c) of the Immigration and Naturalization Act ("Act").[1] The Board's decision was based on the December 4, 1998, decision of the United States District Court for the Southern District of Texas, Brownsville, Texas, which had granted the applicant's petition for writ of habeas corpus, vacated the Board's May 19, 1998, decision and remanded the matter to the Board for further proceedings. The Board apparently was unaware of the subsequent United States Court of Appeals for the Fifth Circuit decision reversing the grant of habeas relief and dismissing the petition, dated April 20, 2000. *See Toscano-Gil v. Trominski*, 210 F.3d 470 (5th Cir. 2000) (copy attached).

Accordingly, because the Fifth Circuit has upheld the administratively final order of exclusion against the applicant, the Service respectfully requests that the Board vacate its

---

[1] In a prior decision dated May 19, 1998, the Board had sustained the Service appeal and ordered the applicant excluded and deported from the United States.

December 21, 2001, decision in this matter and reinstate its prior order of May 19, 1998, which ordered the applicant excluded and deported from the United States.

Respectfully submitted,

Lisa M. Putnam
Assistant District Counsel
U.S. Department of Justice
Immigration & Naturalization Service
P.O. Box 1711
Harlingen, Texas  78551

CERTIFICATE OF SERVICE

I, _Frances Stewart_, Legal Assistant, hereby certify that a true copy of the foregoing Immigration and Naturalization Service Motion to Reconsider was served upon the respondent or counsel for respondent by depositing the same in the United States mail, postage prepaid, addressed to:

    Thelma O. Garcia, Esquire
    301 E. Madison Ave.
    Harlingen, TX 78550

on this _9th_ day of _January_, 2002.


                                    _Stewart_
                                    Legal Assistant
                                    Immigration & Naturalization Service

210 F.3d 470
**(Cite as: 210 F.3d 470)**

Page 2

▷

United States Court of Appeals,
Fifth Circuit.

Isaias TOSCANO-GIL, Petitioner-Appellee,
v.
E.M. TROMINSKI, District Director, Immigration &
Naturalization Service; Janet
Reno, U.S. Attorney General, United States of
America, Respondents-Appellants.

**No. 99-40123.**

April 20, 2000.

Excludable alien, denied waiver of deportation,
petitioned for writ of habeas corpus The United
States District Court for the Southern District of
Texas, Hilda G. Tagle, J., granted writ, and
government appealed. The Court of Appeals, Rhesa
Hawkins Barksdale, Circuit Judge, held that alien
was not denied due process by Board of Immigration
Appeals.

Reversed and dismissed.

West Headnotes

**[1] Constitutional Law** 🔑 274.3
92k274.3 Most Cited Cases

Aliens in deportation proceedings are entitled to due
process. U.S.C.A. Const.Amend. 5.

**[2] Constitutional Law** 🔑 274.3
92k274.3 Most Cited Cases

To prevail on claim of denial of due process in
deportation proceedings, alien must demonstrate
substantial prejudice. U.S.C.A. Const.Amend. 5

**[3] Aliens** 🔑 54(5)
24k54(5) Most Cited Cases

**[3] Constitutional Law** 🔑 274.3
92k274.3 Most Cited Cases

**[3] Habeas Corpus** 🔑 521
197k521 Most Cited Cases

Alien, excludable because of drug conviction, was
not denied due process on application for waiver of
inadmissibility, and thus was not entitled to habeas

corpus relief, when Board of Immigration Appeals'
mischaracterized his separate DWI arrest as a
conviction; factual error is not due process violation,
and critical factor was drug conviction, not erroneous
statement about DWI arrest. Immigration and
Nationality Act, § 212(c), 8 U.S.C.(1994 Ed.) §
1182(c); 28 U.S.C.A. § 2241.

**[4] Aliens** 🔑 54(5)
24k54(5) Most Cited Cases

**[4] Constitutional Law** 🔑 274.3
92k274.3 Most Cited Cases

**[4] Habeas Corpus** 🔑 521
197k521 Most Cited Cases

Alien, excludable because of drug conviction, was
not denied due process on application for waiver of
inadmissibility, and thus was not entitled to habeas
corpus relief; alien was given opportunity to be heard
and to present evidence, and Board of Immigration
Appeals gave full consideration to evidence
presented, to equities, and to established precedent.
Immigration and Nationality Act, § 212(c), §
U.S.C.(1994 Ed.) § 1182(c); 28 U.S.C.A. § 2241.
*470 Lisa S. Brodyaga (argued), Refugio Del Rio
Grande, San Benito, TX, Lucas Guttentag (argued),
American Civil Liberties Union Foundation,
Immigrants Rights Project, San Francisco, CA, for
Petitioner-Appellee.

*471 Papu Sandhu (argued), David Michael
McConnell, U.S. Dept. of Justice, Office of
Immigration Litigation, Washington, DC, for
Respondents-Appellants.

Appeal from the United States District Court for the
Southern District of Texas.

Before BARKSDALE, BENAVIDES and
STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The linchpin to the Government's challenge to the 28
U.S.C. § 2241 habeas relief granted excludable alien
Isaias Toscano-Gil is whether he states a cognizable
constitutional claim by asserting that, in denying him
a waiver of inadmissibility, the Board of Immigration
Appeals violated his right to procedural due process
by characterizing his DWI arrest as a conviction and

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

210 F.3d 470
**(Cite as: 210 F.3d 470)**

Page 3

failing to discuss certain relevant factors or distinguish BIA precedent. Because such contentions do *not* state a cognizable constitutional claim, we REVERSE and DISMISS.

## I.

Mexican native and citizen Toscano, a permanent United States resident since 1987, was arrested in March 1996 on returning from a brief trip to Mexico, when Immigration and Naturalization Service Agents found approximately 52 pounds of marijuana in his vehicle's fuel tank. Toscano pleaded guilty to a Texas state charge of marijuana possession and received five years probation.

The INS began exclusion proceedings in May 1996 under § 212(a)(2)(C) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(2)(C), on the grounds that immigration authorities had reason to believe Toscano was involved in illicit trafficking of a controlled substance. Toscano conceded he was excludable on this basis. But, he sought a *waiver* of inadmissibility, pursuant to former INA § 212(c). 8 U.S.C. § 1182(c): "Aliens lawfully admitted for permanent residence who temporarily [go] abroad ... and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted *in the discretion* of the Attorney General. " (Emphasis added.) [FN1]

> FN1. INA § 212(c) was repealed effective 1 April 1997. *See* Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. No. 104-208, § 304(b), 110 Stat. 3009-597 (1996); *see, e.g., Morales- Ramirez v. Reno*, 209 F.3d 977, 981 (7th Cir.2000). Under § 304(b), criminal aliens are ineligible for waivers of exclusion. *See* INA § 240A, 8 U.S.C. § 1229b (replacing INA § 212(c))

In January 1997, the Immigration Judge granted Toscano's application, finding he had demonstrated 'unusual and outstanding" equities; it was "highly unlikely" he would become a repeat offender; and relief was warranted under BIA precedent.

The Government appealed. In May 1998, the BIA, by a two to one decision, vacated the IJ's decision and ordered Toscano excluded and deported.

The BIA majority found Toscano's employment history to be favorable. It noted his wife and

children were residing illegally in this country, while his siblings were lawful permanent residents. Toscano's "length of residence and family ties in this country" were determined to be "favorable factors, but *not* unusual or outstanding equities". (Emphasis added.) And, the majority decided that, in considering Toscano's knowledge of the marijuana, the IJ had "improperly reexamined [his] guilt". It concluded:

> [The] equities do *not* outweigh the adverse factors. The record reflects that [Toscano] committed a *serious criminal act.* Specifically, [he] attempted to smuggle 52 pounds of marijuana into this country. [He] pled guilty to the crime of possession of marijuana. Moreover, [he] conceded that he was arrested *and convicted* in 1993 for driving under the influence.
> **\*472** While we are mindful that the applicant will likely suffer hardship as the result of the applicant's exclusion and deportation, this is a consequence of the applicant's behavior, actions for which he alone is responsible. Moreover, the applicant's family is residing in this country illegally. Although we recognize the economic hardships that exist in Mexico, the record reflects that the applicant has family in Mexico.
> *When we consider all the evidence that the applicant and his witness presented regarding his equities, we simply do not find that he demonstrated that these equities outweigh the adverse factors.* In particular, we find that granting discretionary relief to the applicant does not appear to be in the best interest of this country. *Matter of Burbano*, 20 I & N Dec. 872 (BIA 1994); *Matter of Marin*, 16 I & N Dec. 581 (BIA 1978). (Emphasis added.)

The dissent, on the other hand, found: Toscano's 18 years' residence in this country was an outstanding equity; his wife and children were seeking legal status; and the majority "minimize[d] the hardship" of his deportation on them. The dissent also noted: Toscano's conviction for possession "was his only criminal conviction"; and "the majority's opinion [did not] provide any authority ... that the favorable exercise of discretion" was inconsistent with BIA precedent.

In June 1998, Toscano filed a habeas petition in federal district court. It concluded it had jurisdiction under 28 U.S.C. § 2241(c)(1) and (c)(3) ( "where statutory review is unavailable, or where the petitioner did not deliberately by-pass available statutory procedures").

The court found: in adjudicating Toscano's waiver

request, the BIA failed to consider rehabilitation, failed to consider all of the equities cumulatively; mischaracterized a prior arrest for DWI as a conviction; and "neither followed, nor distinguished, prior precedent decisions ... where ... similar equities" warranted relief. *Toscano-Gil v. Trominski*, No. CA B-98-89, slip op. at 3-4 (S.D.Tex. Dec. 4, 1998). It held that "procedural Due Process" is violated "where, as here, the [BIA] fails to follow (or distinguish) its own precedent, neglects to take into consideration such crucial matters as rehabilitation, and misstates such important facts as ... criminal history". *Id.* at 6.

II.

The Government contests the district court's exercise of § 2241 jurisdiction and its due process holding.

The exclusion proceedings were initiated prior to 1 April 1997, and concluded more than 30 days after the 30 September 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009-546 (1996). *See* note 1, *supra*. Therefore, this case is governed by IIRIRA's transitional rules. *See Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 302-03 (5th Cir.1999).

*Requena-Rodriguez*, rendered while this appeal was pending, held: " § 2241 habeas jurisdiction continues to exist under IIRIRA's *transitional rules* in cases involving final orders of deportation against criminal aliens" (*except* where 8 U.S.C. § 1252(g), quoted below, applies) [FN2], and such review "is capacious enough to include constitutional and statutory challenges" (such as the retroactivity and equal protection claims at issue there), which we *cannot* consider on direct review, and "which would have been cognizable even at the lowest pre-IIRIRA ebb of immigration habeas*473 jurisdiction". *Requena-Rodriguez*, 190 F.3d at 305-06 (emphasis added). *See Alfarache v. Cravener*, 203 F.3d 381, 382 (5th Cir.2000) (upholding district court's exercise of jurisdiction in case "factually indistinguishable" from *Requena-Rodriguez*).

FN2. "Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8

U.S.C. § 1252(g)

The Government asserts that, unlike in *Requena-Rodriguez*, § 2241 habeas jurisdiction does *not* exist here, because: Toscano is *excludable*, rather than deportable; and he is contesting the Attorney General's (AG) *discretionary denial* of relief under former § 212(c), described *supra*. *See Ashby v. INS*, 961 F.2d 555, 557 (5th Cir.1992) (noting AG's "unusually broad discretion" for § 212(c) waivers). [FN3]

FN3. *Max-George v. Reno*, 205 F.3d 194, 202-03 (5th Cir.2000), holds that, for cases involving "aggravated felons", 8 U.S.C. § 1101(a), the IIRIRA's *permanent rules* "channel all judicial review of final orders of removal by the INS to petitions for review filed in the courts of appeals", eliminating § 2241 habeas review. As noted, Toscano's case falls under the *transitional* rules.

We need *not* reach the jurisdictional questions presented by the Government if Toscano has *not* stated a cognizable constitutional claim. Such a claim is a prerequisite for the § 2241 jurisdiction he claims. Toscano asserts a due process violation.

[1][2] Pursuant to the Fifth Amendment, aliens in deportation proceedings are entitled to due process. *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). We review a due process claim *de novo*. *Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir.1993). The alien must demonstrate substantial prejudice. *Anwar v. INS*, 116 F.3d 140, 144 (5th Cir.1997).

As noted, the district court held the BIA denied Toscano "procedural due process" by mischaracterizing his DWI arrest as a conviction, and by failing to consider rehabilitation, to consider the equities cumulatively, and to follow or distinguish precedent.

These claims, according to the Government, are the type properly reviewed for abuse of discretion, *not* for denial of due process. In support, it cites several Supreme Court cases. *E.g.*, *Immigration & Naturalization Serv. v. Yang*, 519 U.S. 26, 32, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996) ("irrational departure" from "general policy" governing exercise of administrative discretion "could constitute ... an abuse of discretion"); *United States ex rel. Vajtauer*

210 F.3d 470
(Cite as: 210 F.3d 470)

*v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927) (alien may establish due process violation by showing he was deported "without a fair hearing or on charges unsupported by any evidence ... *not* ... by showing merely that the decision is erroneous" (emphasis added)); *United States ex rel. Tisi v. Tod,* 264 U.S. 131, 132, 134, 44 S.Ct. 260, 68 L.Ed. 590 (1924) ("mere error, even ... finding an essential fact without adequate supporting evidence, is *not* a denial of due process" (emphasis added)). It also cites numerous cases where we have applied an abuse of discretion standard to similar claims in petitions for review. *See, e.g., Opie v. INS,* 66 F.3d 737, 739-40 (5th Cir.1995) (applying abuse of discretion standard where petitioner claimed BIA erroneously emphasized falsehoods in his nonimmigrant visa application and minimized hardships). [FN4]

> FN4. The Government maintains that the BIA did *not* abuse its discretion, citing, *e.g., Yahkpua v. INS,* 770 F.2d 1317, 1320 (5th Cir.1985) (noting BIA is *not* required to render "absolutely consistent" opinions with similar fact patterns).

Toscano responds that his claims "go to the heart" of due process, claiming the BIA "failed to give meaningful consideration to his application" and supporting evidence, therefore denying him the opportunity to be heard in "a meaningful manner". In support, he cites *Kwock Jan Fat v. White,* 253 U.S. 454, 457-58, 40 S.Ct. 566, 64 L.Ed. 1010 (1920) (immigration *474 orders are "final, and conclusive upon the courts, unless ... the proceedings were manifestly unfair, were such as to prevent a fair investigation, or show manifest abuse of the discretion ... or ... authority was not fairly exercised" (internal quotation marks and citations omitted)). He also cites several of our cases. *E.g., Zamora-Garcia v. INS,* 737 F.2d 488, 490-91 (5th Cir.1984) (courts of appeals may review deportation decisions "'procedurally' to ensure that the complaining alien has received full and fair consideration of all circumstances", and that each of his claims has been "meaningfully addressed" (internal quotation marks and citation omitted)); *Ramos v. INS,* 695 F.2d 181, 189 (5th Cir.1983) (BIA *not* required to address evidentiary minutiae or write "lengthy exegeses"; decision need only reflect meaningful consideration of relevant evidence).

Toscano maintains: the BIA's failure in its opinion to discuss rehabilitation shows its authority was not

"fairly exercised"; its unsupported-by-the-record characterization of an arrest as a conviction, and implicit finding that Toscano had *not* shown sufficient rehabilitation, constitutes "a manifest abuse of discretion"; and substantial prejudice was shown, because the district court determined that, but for the BIA's errors, Toscano likely would have been granted relief.

The claimed bases for due process violations, however, do *not* rise to that level. *See Diaz-Resendez v. INS,* 960 F.2d 493, 496-98 (5th Cir.1992) (applying abuse of discretion standard to claims that BIA improperly weighed equities, failed to follow precedent, and failed to consider hardships or rehabilitation); *Osuchukwu v. INS,* 744 F.2d 1136, 1142 (5th Cir.1984) (BIA decision must be upheld, even if we disagree with it, "so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach").

First, Toscano was *not* denied the opportunity to be heard or present evidence. *See Molina v. Sewell,* 983 F.2d 676, 680 (5th Cir.1993) (alien *not* given opportunity to put on evidence established requisite prejudice); *Chike v. INS,* 948 F.2d 961, 962 (5th Cir.1991) (alien *not* given notice of briefing schedule denied opportunity to be heard).

[3] Second, and needless to say, a factual error is *not* a due process violation. In any event, the critical factor was the marijuana conviction (classified by the BIA as a "serious criminal act"), *not* the erroneous statement about a conviction for the DWI arrest.

[4] Third, the BIA gave full consideration to the evidence presented and to the equities. It decided that the "equities [do *not* ] outweigh the adverse factors".

Finally, concerning BIA precedent, the BIA majority cited the primary cases, *Matter of Burbano* and *Matter of Marin,* relied on by the dissent. In this instance, the majority and dissent simply disagree over the application of BIA precedent. Obviously, that is *not* a due process denial.

The BIA dissent provided further matters upon which the majority could reflect. For example, the dissent noted the marijuana incident was Toscano's *only* conviction, and raised the precedent issue. This notwithstanding, Toscano did *not* ask the BIA to reconsider its decision.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

210 F.3d 470
(Cite as: 210 F.3d 470)

For § 2241 habeas jurisdiction to even exist per *Requena-Rodriguez,* Toscano must have stated a cognizable constitutional claim. He has *not* done so. [FN5]

>　FN5. Jurisdiction *vel non* under § 2241 for abuse of discretion is *not* claimed. And, in the light of our holding, we need *not* address the Government's contention that denials of former § 212(c) relief do *not* implicate due process. *See Mejia Rodriguez v. Reno,* 178 F.3d 1139, 1146 (11th Cir.1999) ("failure to receive relief that is purely discretionary in nature does *not* amount to a deprivation of a liberty interest" (emphasis added)).

*475 III.

For the foregoing reasons, the grant of habeas relief is REVERSED, and the petition is DISMISSED.

*REVERSED and DISMISSED.*

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works



EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

In re
    ISAIAS TOSCANO-GIL,
    A91 229 833

RESPONDENT'S OPPOSITION TO INS' MOTION TO RECONSIDER
I.   INTRODUCTION

The instant case has a long history.  The Respondent received a
grant of §212(c) from the Immigration Judge.  INS appealed, and, in
a two-to-one decision, the Board reversed the Immigration Judge,
and ordered that he be excluded and deported.  Mr. Toscano filed a
petition for writ of habeas corpus, which was granted by the United
States District Court, over INS' objections that said Court lacked
jurisdiction. INS again appealed, and the Fifth Circuit reversed
the District Court, on jurisdictional grounds.  Notably, INS did
not contest, and the Fifth Circuit did not disapprove, the findings
of fact by the District Court, relating to the errors committed by
the Board in reversing the Immigration Judge's grant of discretion.

On December 21, 2001, the Board reversed itself, on the basis of
the following findings, and reasoning (emphasis added):

> ... The [district] court found that the Board had not
> adequately or correctly assessed the facts of the case,
> and had not considered the Immigration Judge's finding
> with regard to rehabilitation.
>
> In light of the court's findings, **and upon further review
> of the record, we conclude that there is no adequate
> basis for overturning the Immigration Judge's decision
> granting discretionary relief**.  We note in particular the
> respondent's very long residence in this country, and the
> fact that he has only one conviction, and was sentenced
> only to probation for that offense.

INS now seeks reconsideration of this decision.  Notably, INS does
not dispute the **merits** of the Board's reasoning.  Nor does the

Service argue that the Fifth Circuit reversed, or disapproved, of any of the factual findings of the District Court. In essence, the Service acknowledges that, as concluded in its decision of December 21, 2001, the Board's prior decision was in error, and the grant of relief to Mr. Toscano should not have been rescinded. But because the Fifth Circuit found that the District Court lacked jurisdiction over the case, INS now asserts that the otherwise meritorious grant of relief should again be taken away. This would work an egregious miscarriage of justice, to Mr. Toscano, and to his wife and children, in whose cases INS' appeals from the Immigration Judge's grant of adjustment of status are still pending. [1]

## II.   THE FACTS AND PROCEDURAL HISTORY [2]

Isaias Toscano-Gil is a married, native and citizen of Mexico, who has lived and worked in the United States since 1980. He obtained his status as a lawful permanent resident through the Amnesty provisions of the Immigration Reform and Control Act of 1986. In March of 1996, Mr. Toscano was stopped at the international bridge, when the vehicle he was driving was discovered to contain approximately 52 pounds, (23.6 kilograms) of marijuana, apparently secreted in the gas tank. Mr. Toscano disclaimed knowledge of the marijuana, and the Office of the U.S. Attorney declined prosecution, passing the case to the State of Texas.[3]    He

---

[1]  *See,* In re Isaias Guadalupe Toscano-Montemayor, A76 228 477 Odelia Montemayor De Toscano, A76 228 473; Odelia Toscano-Montemayor, A76 228 474; Isael Toscano-Montemayor, A76 228 475, and Isaul Toscano-montemayor, A76 228 476. INS' appeal in these cases is based on the assertion that because Mr. Toscano lost his status as a lawful permanent resident while INS' appeal of that grant was pending, his family can no longer immigrate through him. Respondents dispute that claim, and have also shown that, by virtue of the Decision of December 21, 2001, his status has been restored.

[2]  Citations herein are to the record of proceedings, as provided to the Fifth Circuit.

[3]  The Immigration Judge found that Mr. Toscano was a credible witness, (R:196-198), and the BIA did not reverse her finding in

ultimately pled guilty to simple possession of marijuana, because
he felt "responsible" for the marijuana, since it was found in his
vehicle.  The trial judge granted him five years probation. (R:284-
289,444-450).  Exclusion proceedings followed.

At the close of the hearing, the Immigration Judge granted Mr.
Toscano's application for §212(c) relief.  She accepted his guilt
for purposes of balancing the equities and negative factors in the
case.  Nonetheless, she found, on the basis of her experience in
the Rio Grande Valley, the consistency of his account of events and
his demeanor, that Mr. Toscano's testimony was plausible [4] and
credible in all material respects. [5] The Judge also concluded that
Mr. Toscano had demonstrated "unusual *and* outstanding" equities in
the United States, (R:207), and determined that he merited relief
in the exercise of discretion.  INS appealed, challenging both his
statutory eligibility, under AEDPA, and the Judge's conclusion that
Mr. Toscano merited §212(c) relief.

In a two-to-one decision, the BIA found Mr. Toscano to be
statutorily eligible for §212(c) relief, but held that he had not

---

this regard, other than to express a caveat that she could not go
behind the conviction to reassess his guilt or innocence,
(R:3,n.2). With this caveat in mind, the facts as found by the
Immigration Judge, will therefore be taken herein as established.

[4] An additional factor, not mentioned by the Immigration
Judge, which tends to corroborate Mr. Toscano's version of events,
is the fact that, although he was arrested by Federal Agents, he
was not prosecuted in federal court, where he would have faced much
more serious charges.  Rather, prosecution was declined, and the
State of Texas prosecuted the case, following which, he was granted
five years probation.

[5] There is a fine line between evaluating the credibility of
testimony regarding the circumstances of the offense for the
purpose of re-evaluating guilt or innocence, and determining an
applicant's credibility for purposes of evaluating rehabilitation.
The Immigration Judge herein attempted to walk this tight-wire,
finding his testimony credible, even while not going behind the
conviction, for purposes of balancing the equities.

3

shown "unusual or outstanding" equities, as required when "serious" drug offenses are involved, and that he therefore did not deserve relief. (R:2) *Matter of Buscemi,* 19 I&N Dec. 628 (BIA 1988). In so doing, as pointed out by the dissent, (R:4-5), the Board departed, without explanation, from its numerous precedent decisions finding equities similar, or even inferior to, those presented by Mr. Toscano to reach the level of "unusual or outstanding."

In determining whether or not "unusual or outstanding" equities had been shown, the Board also failed to acknowledge, let alone give meaningful consideration to, important favorable factors presented by Mr. Toscano. *See, Diaz-Resendez v. INS,* 960 F.2d 493, 495-96 (5th Cir. 1992) (BIA found that alien had not presented unusual or outstanding equities. However, "[o]ur review of the record convinces us that the Board did not properly weigh serious positive equities"); *Id.* at 497 ("Board must do more than just refer to relevant factors in passing."); *Opie v. INS,* 66 F.3d 737 (5th Cir. 1993) (Although BIA need not "write an exegesis on every contention, ... its opinion must reflect that it has heard and thought and not merely reacted.").

For example, the majority opinion claimed that Mr. Toscano had been "arrested and convicted in 1993 for driving under the influence." (R:3). However, as found by the Immigration Judge, (R:185), Mr. Toscano had retained counsel: [*]

> who was able to get the charges dropped after his attorney obtained the results of a urinalysis test that concluded that Mr. Toscano in fact was not intoxicated at the time of his arrest.

Even more significantly, in concluding that Mr. Toscano had not

---

[*] Notably, even INS agreed in its brief to the BIA that these charges had been withdrawn. (R:143).

4

presented the required level of equities, there was no mention of
the Judge's discussion of Mr. Toscano's showing of rehabilitation,
and her conclusion that it was "highly unlikely" that he would be
a repeat offender (R:209-211).   Even under the case cited by the
BIA in reaching its conclusion, rehabilitation is undoubtedly the
single most important equity in determining whether an applicant
merits §212(c) relief. *Matter of Buscemi, supra* at 635.   Without
taking rehabilitation in account, the Board's conclusion that
granting relief "does not appear to be in the best interests of
this country," (R:3), does not reflect meaningful consideration
required by *Diaz-Resendez, supra,* and *Opie, supra.* [7]

## A.  RESIDENCE, FAMILY TIES AND HARDSHIP [8]

Mr. Toscano has resided in the United States since 1980.  He became
a lawful temporary resident in 1987, and thereafter adjusted to
permanent resident status.  Since his arrival, he has maintained
his domicile continuously in the United States, leaving only to be

---

[7]     An additional factor supporting the Judge's conclusion
that Mr. Toscano has been rehabilitated is the fact that he so
valued his status as a lawful permanent resident that he persisted
in his application, even though detained by the Immigration
authorities from March of 1996 until November of 1997, when INS
finally agreed to release him on a $3,000 bond. *See, Toscano-Gil
v. Trominski,* C.A. B-96-164, Hon. Filemon B. Vela, presiding.  This
contrasts sharply with the great majority of similarly situated
aliens, who accept an order of deportation, and then return
unlawfully to the United States.  In concluding that Mr. Toscano
had not shown "unusual or outstanding" equities, the Board also
failed to mention, let alone consider, this "unusual" equity.

[8]     INS presents herein, (INS:4-8), virtually the identical
factual statement as was included in its brief to the BIA, (R:140-
146), in which it unsuccessfully challenged the Immigration Judge's
finding that Mr. Toscano was a credible witness.  In so doing, INS
ignores both Mr. Toscano's "rebuttal" of this statement of facts,
(R:13-22), and, even more importantly, the fact that the BIA did
*not* reverse the Immigration Judge on credibility grounds, but on
the basis that the equities allegedly did not rise to the required
level of "unusual or outstanding."

with his family in Mexico for short periods of time, until 1993, when they joined him in the United States. His wife's mother still resides in Mexico, but her siblings are all lawful permanent residents, including four who live in Texas, and one in Louisiana. Mr. Toscano also has a number of other relatives who are lawfully in the United States. (R:45,80-81,94-96,415-426).

Mr. Toscano and his wife of more than twenty years have four children, ages eight to nineteen. As previously noted, they were granted adjustment of status by a (different) Immigration Judge, at a time when Mr. Toscano **was** a permanent resident, but INS appealed that grant. Mr. Toscano built a home on his brother's land in Mexico, where the family lived. He has been a responsible father, sending his family money on a regular basis while they were in Mexico, and thereafter supporting them in the United States. However, due to the financial complications resulting from the fact that he had already been detained for about ten months at the time of his hearing, in January, 1997, his children were scattered among different relatives (all lawful permanent residents) (R:266,269, 273-275,318,347,415-426). They have since reunited, and are hoping that the family will not again be dissolved, or dislocated.

Mr. Toscano's father, who used to work as a contract laborer in the U.S., is deceased. His mother lives in Mexico, but has a U.S. visa, which allows her to come visit her son and his family. (R:271-272).

Mr. Toscano only has a fourth grade education. However, he places great emphasis on the education of his children, as do the children themselves. Before he was detained, he used to get up early in the morning to take his children to school, as the bus did not come to the area where he lived. Since he sometimes worked up to seven days a week, it was his wife who would meet with his children's teachers, and assist with activities at school. Although they had only been in the U.S. for a few years when they testified, his

6

children were already nearly bi-lingual. Mr. Toscano also speaks some English, and attended classes to obtain his permanent residence as part of the Amnesty program, (R:277-279,314,330).

The Toscano family is a "humble, but a united, humble family." Mr. Toscano is very close to his wife, and children. He is also close to his sister Gloria, her family, and his other siblings, all lawful permanent residents. They even came down from Michigan to testify on his behalf at the hearing which was canceled at the last minute. (R:293-295,415-426).

When he is not spending his Sundays at work, Mr. Toscano attends Catholic church services. He also makes monetary contributions to the Church when he is able. A friend, Brother Hymie, visits frequently, and explains about "the word." (R:312). Since he was detained so long by INS, Mr. Toscano took on an unofficial role of go-between, helping newcomers to the detention center with such practical problems as locating assistance in cashing checks, and obtaining change for the vending machines, (R:312-313).

Mr. Toscano's olest son, Isaias Toscano, also testified on his behalf. He attended two years of school in the U.S., and had two more to go. But he was forced to drop out, temporarily, due to his father's detention, since the family could no longer afford even minimal school expenses. He looked forward to the day, however, when his father would be released from detention, the family would be re-united, and he and his siblings would be able to complete their education. (R:325-326,330-331). Isaias was very surprised when his father was arrested, because he "knew that he had never been involved in that." (R:331). Isaias testified that his father had advised him never to get involved with drugs, "that it would be the wrong way," (R:332). He also corroborated that his father has a close and loving relationship with the family. (Id.).

Isaias was aware that if his Father were deported, the family would

7

probably have to go to Mexico as well, since it was through him that they were arranging their documents. He testified that he did not want to go, because he likes living in the United States, and was quite conscious of the possibilities of building a good future in this country, possibilities which would not exist for him and his siblings in Mexico. (R:333,343-344).

Not only was the family separated for eighteen months while Mr. Toscano was in INS custody, but the day they came to testify was the first time that his son had even been able to visit him, due to the financial complications resulting from the loss of the family breadwinner. [9] The separation was also hard, emotionally, for everyone. (R:334,345). Mr. Toscano's deportation would mean not only the loss of his own residence in this country, but possibly that of his wife and children, as INS is arguing that the loss of his LPR status also voids the grant of adjustment of status to his wife and children by the Immigration Judge.

## B.  EMPLOYMENT HISTORY

Since his arrival in the U.S., Mr. Toscano has worked as a pool plasterer.   The work pays well, if somewhat erratically, with greater demand in the summer months.   He receives $100 per pool, and, on a good day, can complete two pools.   (R:281).  Apart from approximately six months in late 1995 and early 1996 when he received food stamps, during a period of unemployment, Mr. Toscano has never received any type of governmental assistance.   He has paid his taxes, and filed income tax returns, on a regular basis, although he was unable to do so for the last two years.    His employers in Louisiana did not provide him with the required reports as to his earnings, until he "insisted and insisted."   He finally obtained them shortly before his hearing, and planned to

---

[9]    It was when they came to testify at Mr. Toscano's hearing that his family was arrested, and also placed under proceedings.

file the missing returns, so that he could be "current and up to date" on his obligations. (R:282-284). Given the opportunity, Mr. Toscano hopes to return to a productive life, making a home for his wife and children, (R:308,290):

> ... I want to be given the opportunity to live here, so that I can demonstrate that I am as I always have been a working man. So that I can unite [my family] with me again so that my family can go forward and succeed in school. That is in school, because first of all here in this country without English one is no one.

Since his entry in 1980, Mr. Toscano has worked only as a pool plasterer. If he were deported, he would not be able to earn anything even approximating his level of income in the United States. Employment for unskilled laborers in Mexico is in very short supply, and such jobs are extremely poorly paid. Work for pool plasterers, the one skill he possesses, are even more scarce. (R:292,303-304,308-309). As a valued worker, his old job awaited him in Houston, when he regained his freedom, (R:308):

> [I]n Houston I do have my work available to me. The companies that I have worked for. In fact they have given me good recommendations.

Mr. Toscano was finally released from INS detention, and allowed to return to his job, and family. Now INS has placed his future, and that of his family in doubt, again, even though they do not dispute the Board's finding that he **deserves** discretionary relief.

### C. CRIMINAL HISTORY, CIRCUMSTANCES OF THE OFFENSE AND REHABILITATION

In March of 1996, Mr. Toscano went to Mexico to visit his mother, who was ill. Just before leaving, he sold his car, and used to proceeds for the down payment on a used truck, which he drove to Mexico. He was to pay $5,000 for the truck. He returned on a Sunday, about two or three days later. When he arrived at the

9

bridge, one of the officers asked permission to search the truck, which he readily gave. However, the officers found about 50 pounds of marijuana secreted in the vehicle, apparently, in the gas tank. He testified that he had not known the marijuana was there, but that he pled guilty to the offense, in part because he felt responsible, since it was his truck, and in part, on the advice of counsel, so that he could obtain his release. [10]  Mr. Toscano explained the circumstances to the sentencing Judge, and was given five years probation. [11]  (R:284-288,302-306,309-311).

Mr. Toscano testified that he felt "embarrassed" about the arrest, because he had "never done anything, nothing like that." Apart from this offense, he has never bought, sold, used, or possessed drugs, or engaged in any other illegal activity. He begged the Court for forgiveness, explaining that it was never his intention to do anything like this, but that he did feel responsible, because it was his vehicle. (R:288-289,306-307). When asked what was his philosophy about drugs, Mr. Toscano responded as follows, (R:289):

> ... Work, play ball, when there's time, something like
> that. But, I don't do nothing, nothing like that. I am
> against drugs. That is because I have children.
> They're up in age. I hope that nothing will ever happen
> to them on any day.

Apart from the instant offense, Mr. Toscano was arrested only once, in approximately 1993, for DWI. The arrest occurred not because he

---

[10]    The fact that innocent people sometimes plead guilty for such reasons was recently discussed by Judge Weinstein in *Mojica v. Reno,* 970 F.Supp. 130, 175-176 (E.D.N.Y. 1997).

[11]    Although he was stopped by Federal Agents, the U.S. Attorney declined prosecution, and his case was referred to the State authorities. This indicates that the case against him was weak, which is consistent with his version of events. It is also highly unlikely that any Judge would have granted probation if he or she believed that Mr. Toscano was lying about the offense.

was intoxicated, [12] but because he had been involved in an accident. Charges were eventually dropped, after the lab tests were located, confirming that he was not intoxicated. (R:279-280).

All of Mr. Toscano's family attested to the fact that he was a good husband, a good father, a good provider for the family, and that the marijuana arrest was completely out of character. (R:318,415-426). As explained by his nephew, an eleventh grade student in Detroit, Michigan, (Id.): [13]

> I have known my uncle to be a good father and husband to his wife and four children, and a good brother to my mother. He has been a loving, caring, hard working individual. We are a very united family, and it hurts us to see him in this predicament. My uncle is a hardworking individual, he has been employed as a pool plasterer for a number of years. I have never known my uncle to be involved in any criminal activities, or ever been involved with any wrongdoing. Personally, my father has always taught us not to drink or do drugs. Presently, I do not smoke, drink, or do any type of drug. Without this guidance I received from my father, I may not have turned out like I did. I am a hardworking, honest individual. I have also known my uncle to counsel with his children against the ills of drugs and alcohol, and about staying in school  It would be a hardship on his family and all us if her were deported. My uncle has taken responsibility with his actions, and is remorseful. He is sorry for what he has put all of his family

---

[12]    As Mr. Toscano explained, the officer on the scene of the accident asked if he had been drinking, and he replied that he had had one or two beers. He was taken to a hospital due to his injuries, where he consented to an alcohol test. However, the test results were either misplaced, or withheld, and his license was temporarily suspended. He obtained an attorney, who tracked down the missing lab report, which confirmed that he had not been intoxicated. The charges were dropped. The attorney even suggested that Mr. Toscano sue the police officer. He declined, saying that "he was not one of those persons." (R:279-280).

[13]    Because they had come to a hearing that was rescheduled, their Affidavits were accepted in lieu of live testimony.

11

> through.  I know that he will never be involved in any
> type of illegal activity.  I plead with this court for my
> uncle's release.  He is his family's main financial
> source.  It would be devastating for all of us if he were
> deported.  His kids need his guidance and attention, and
> are very concerned about their future.  I know the
> importance of a father's care and attention to his
> children.  They are suffering a lot with his absence.

In fact, Mr. Toscano's two oldest boys were forced to temporarily
drop out of school, due to his prolonged detention by INS. (R:319).

Mr. Toscano (and his son) testified that he has counseled his
children about the evils of drugs, and that he believes in obeying
the law.  (R:290).  If ordered deported, and if left with "no other
remedy," he testified that he would "have to obey," and would leave
the country, (R:291).  If, however, he is given a second chance, as
the Immigration Judge, dissenting Board Member, United States
District Judge, and now, the Board itself, have all concluded that
he deserves, he promised that he would "continue to work" as he has
always done, and that there was "no way" that he would ever find
himself involved in criminal misconduct in the future.  (R:291).  To
date, he has kept his word.

This assessment was shared by all concerned, including the
sentencing Judge, who granted Mr. Toscano five years probation,
based on the following finding, (R:445) (emphasis added):

> *[T]he Court, after hearing the evidence* and argument of
> counsel on the question of punishment and after due
> consideration, is of the opinion and so finds, that the
> Defendant has never been convicted of a Felony in this or
> any other State, and is otherwise eligible for Probation,
> and *is further of the opinion, and so finds, that the
> ends of justice and the best interest of both the public
> and the Defendant will be subserved if the imposition of
> the sentence in this cause be suspended and the Defendant
> be placed on Probation under the supervision ...*

12

The above facts are uncontroverted, although many were ignored, and one was misstated in the initial majority opinion of the Board.

### III.  ISSUE PRESENTED

**WHERE THE BOARD HAS FOUND THAT ITS PRIOR DECISION WAS IN ERROR, AND CONCLUDED THAT THERE WAS "NO ADEQUATE BASIS FOR OVERTURNING THE IMMIGRATION JUDGE'S GRANT OF DISCRETIONARY RELIEF," IT WOULD WORK A MISCARRIAGE OF JUSTICE, AND VIOLATE DUE PROCESS, TO AGAIN REVOKE THE GRANT OF §212(c) RELIEF, SIMPLY BECAUSE THE FIFTH CIRCUIT CONCLUDED THAT THE DISTRICT COURT HAD IMPROPERLY EXERCISED JURISDICTION OVER THE BOARD'S INITIAL DECISION, AND MOST PARTICULARLY WHERE THAT CONCLUSION HAS BEEN CALLED INTO DOUBT BY LATER DEVELOPMENTS, INCLUDING *INS v. ST. CYR,* 121 S.Ct. 2271 (2001)**

### IV.  ARGUMENT

In his habeas petition, Mr. Toscano urged that the majority opinion of the BIA, reversing the Immigration Judge's grant of reilef, was both procedurally and substantively flawed, and that the case should be remanded.  He argued that the Board misstated important facts, (such as the erroneous statement that he had also been convicted of DWI), and neglected to consider significant equities, including, most importantly, rehabilitation. He also urged that the majority reached its conclusion without regard to its own precedent decisions, which would have mandated the opposition result.

As previously noted, the decision of whether or not to grant §212(c) relief is vested in the sound discretion of the Attorney General.  As with 8 USC §1251(a)(1)(H)(ii), there are no *statutory* limitations to the factors to be considered in determining how such discretion is to be exercised.    But, also as with 8 U.S.C. §1251(a)(1)(H)(ii), once the Attorney General determines, whether by rule-making or adjudication, what the pertinent factors will be, a failure to apply them consistently is an abuse of discretion.

13

*INS v. Yang,* 117 S.Ct. 350 (1996); *Diaz-Resendez v. INS, supra.*
The case at bar presents a classic example of this phenomenon.

Under BIA precedent, the ultimate determination of whether or not
to grant a §212(c) waiver is based on the "best interests of this
country." *Matter of Marin,* 16 I&N Dec. 581,584 (BIA 1978). Of all
the factors to be considered in determining what is in the "best
interests of this country," the most important is whether or not
the person has been "rehabilitated," i.e., the likelihood that he
or she will commit another offense. *Id.* at 588. *See also, Matter
of Roberts,* 20 I&N Dec. 294, 299 (BIA 1991); *Matter of Edwards,* 20
I&N Dec. 191, 196 (BIA 1990) (emphasis added):

> With respect to the issue of rehabilitation, the Board
> noted in *Matter of Marin, supra*, at 588, and reiterated
> in *Matter of Buscemi, supra*, at 10, that *a section 212(c)
> waiver applicant who has a criminal record "ordinarily"
> will be required to make a showing of rehabilitation
> before relief will be granted as a matter of discretion.*
> This language has been interpreted in some cases as
> though a clear showing of reformation is an absolute
> prerequisite to a favorable exercise of discretion in
> every case involving an alien with a criminal record. To
> the extent that this language may be read as creating an
> absolute prerequisite to a favorable exercise of
> discretion, we withdraw from it. Rather, section 212(c)
> applications involving convicted aliens must be evaluated
> on a case-by-case basis, *with rehabilitation a factor to
> be considered in the exercise of discretion.*

In its initial decision, the Board neglected to consider the
question of rehabilitation. In fact, the term is nowhere mentioned
in the majority decision, even though it purported to conclude that
granting relief "does not appear to be in the best interest of this
country." (R:3). In his habeas petition, Mr. Toscano argued that,
both under BIA precedent, and simple common sense, this ultimate
fact cannot be determined without considering the probability, or

14

improbability, that he would commit another criminal offense.

The Immigration Judge paid considerable attention to the question of whether Mr. Toscano was likely to be a repeat offender. (R:187-188,201,209-211). She concluded that he would not, (R:211):

> Thus the record as a whole indicates to the Court that Mr. Toscano has taken full responsibility for his actions, is remorseful for the events that have led up to his current legal dilemma, and that *he is highly unlikely to engage in any future illegal activity*. Therefore the Court finds that Mr. Toscano has demonstrated that he has taken very positive steps towards rehabilitation and that he will continue along that road if he is allowed to remain living in this country.

A second crucial error was the fact that, as previously noted, in its initial decision, the Board erroneously stated that Mr. Toscano had "conceded that he had been arrested *and convicted* in 1993 for driving while under the influence." (R:3) (emphasis added). In its brief on appeal, even INS recognized that this incident had not resulted in a conviction, but that the "charge was withdrawn," (R:143). And, as noted by the dissent, (R:5), the Board also failed to consider other factors raised in Mr. Toscano's opposition to INS' appeal. For example, he noted, (R:27), that the sentencing Judge had granted him a suspended sentence, on a finding that this was in his best interest, and that of society. *See, Diaz-Resendez v. INS, supra* at 494:

> Of particular note, and of substantial significance, the very experienced trial judge suspended all but four months of the jail sentence.

Similarly, the Board failed to address his contention that the offense was contrary to his entire lifestyle, (R:27), which was also identified as an important factor in *Diaz-Resendez v. INS, supra,* at 498. In that case, the Court concluded that the BIA had

15

inexplicably departed from established precedent, and failed to actually consider and meaningfully address positive equities and favorable evidence.    As explained therein, *Id*. at 495 (some internal citations omitted):

> The Board's denial of an applicant's petition for relief under section 212(c) is reviewed for abuse of discretion. ...When determining whether the Board's action was arbitrary, irrational, or not in accordance with the law, we "engage in a substantial inquiry, ... a thorough, probing, in-depth review of [the] discretionary agency action."    Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 153 (1971); Acadian Gas Pipeline System v. FERC, 878 F.2d 865 (5th Cir.1989) (reviewing court does not rubberstamp agency decisions; instead, review must be searching and careful).

> Under this standard, the Board's decision may be reversed as an abuse of discretion when it is made without rational explanation, or inexplicably departs from established policies. ... Graphic Communications Int. Union, Local 554 v. Salem-Gravure Div. of World Color Press, Inc., 843 F.2d 1490, 1493 (D.C.Cir.1988) cert. denied sub nom. World Color Press, Inc. v. Dole, 489 U.S. 1011, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989) ("Agency decisions that depart from established precedent without a reasoned explanation will be vacated as arbitrary and capricious.").    Further, a decision by the Board may be found arbitrary if the Board fails to address meaningfully all material factors extant. Luciano-Vincente v. INS, 786 F.2d 706 (5th Cir.1986) (the Board's failure to consider a pertinent factor constitutes abuse of discretion); ... Zamora-Garcia v. INS, 737 F.2d 488, 490-91 (5th Cir.1984) (INS must "actually consider" the facts, "meaningfully address" each claim of hardship, and give "reasons for denying relief that reflect full consideration of the evidence.") (citing Ramos v. INS, 695 F.2d 181 (5th Cir.1983)).

In his habeas petition, Mr. Toscano urged that the Board had committed the self-same error[s] in his case as had occurred in *Diaz-Resendez, supra*.  The BIA failed to consider crucial favorable

factors, and ignored its own precedent, in determining that Mr. Toscano had not shown "unusual or outstanding" equities, and that he therefore did not merit discretionary relief.

As the dissent also noted, (R:5), in concluding that Mr. Toscano's eighteen years in the United States was not an "outstanding" equity, the Board disregarded its own precedent. For example, in *Matter of Burbano,* 20 I&N Dec. 872 (BIA 1994), the applicant had resided in the United States for only *twelve* years.    The Board noted that he had been imprisoned for a "number of those years," and that his first criminal conviction occurred only three years after his entry.    The Board concluded that "[t]hese factors diminish the significance of the respondent's length of residence and *prevent that residence from being deemed an outstanding equity.*"    *Id.* at 875 (emphasis added).    Similarly, in *Matter of Buscemi, supra,* the Board concluded that 19 years, only one year more than Mr. Toscano had resided in this country at the time of his appeal, was an "outstanding equity."    Yet the BIA neither followed nor distinguished these cases, as required by *INS v. Yang supra,* and *Diaz-Resendez v. INS.*

Moreover, in concluding that Mr. Toscano had, indeed, demonstrated "unusual or outstanding" equities, the Immigration Judge considered the totality of the equities presented, in accordance with *Matter of Edwards, supra,* at 197.    Yet in determining that Mr. Toscano had not presented "unusual or outstanding" equities, the Board purported to consider only his "length of residence and family ties."    (R:2).    His employment history was later found to be a "favorable factor," but was not weighed with length of residence and family ties, in order to determine whether they rose, cumulatively, to the level of "unusual or outstanding" equities. This same error was noted in *Diaz-Resendez, supra,* at 496.

17

As further noted by the dissent, (R:5), the Board inappropriately devalued the hardship which his deportation would cause Mr. Toscano's family, on the grounds that they were not yet lawful permanent residents. This is also inconsistent with prior precedent, including *Matter of Marin*, *supra*. And, as noted, the BIA overlooked the most important equity of all - Mr. Toscano's convincing showing, as found by the Immigration Judge, that he would never again become involved in criminal conduct. (R:211).

In *Matter of Arreguin*, Interim Decision 3247 (BIA 1995), the Board granted §212(c) relief to an applicant whose equities, and criminal history, were virtually identical to those of Mr. Toscano, with one important distinguishing factor. Ms. Arreguin was prosecuted by the federal authorities. She was not granted probation, but had been incarcerated for approximately two years when her application was finally adjudicated. Like Mr. Toscano, she was in exclusion proceedings, having been stopped at the border with more than three times as much marijuana as was involved herein, (78 vs. 23.6 kilograms). She had resided in the U.S. for fewer than twenty years, [14] and although her children were U.S. citizens, [15] she had a far more limited history of employment, including two periods when she received welfare. Her minor children were also receiving Aid to Families With Dependent Children at the time of the hearing.

In *Arreguin*, the Board gave positive consideration to the applicant's efforts at rehabilitation, even though she was still

---

[14] The Board specifically found that her residence was an outstanding or unusual equity. Slip Opinion at page 6.

[15] While this raised their "value" as a positive equity, it also diminished the hardship they would suffer if she is deported. Most were already adults, and the two minor children were able to remain in the U.S., with their aunt, where they were residing at the time of her hearing. By contrast, the ability of Mr. Toscano's wife and children to remain in the United States is directly dependent upon whether or not he is granted a §212(c) waiver.

incarcerated, and to the fact that this was her only conviction. Here, the Board ignored the question of rehabilitation, and misstated Mr. Toscano's criminal record, to his detriment. [16]

In sum, in its initial decision, the Board failed to consider the totality of the positive factors presented, such as the finding of the Immigration Judge, based on the record as a whole, including the testimony and demeanor of Mr. Toscano, who represented "to the Court in a very convincing manner that he does not intend to ever have any other type of problems with the law," (R:209), that he "*is highly unlikely to engage in any future illegal activity,*" (R:211). The Board also misstated crucial facts, such as Mr. Toscano's criminal history, and failed to follow its own precedent, including *Matter of Burbano, supra,* and *Matter of Arreguin, supra,* in the manner in which it evaluated the equities.

It was therefore urged, and the District Court concurred, that, had the BIA properly evaluated the facts, under its own precedent, it would, as argued by the dissent, have granted §212(c) relief. The Fifth Circuit's decision does not disturb this factual finding.

Now, the Board has reached the same conclusion. Based on its own, "further review of the record," the Board has acknowledged that Mr. Toscano deserves discretionary relief, and has granted said relief. Yet INS would have the Board rescind that grant, **not because it was erroneous, on the merits, but solely because the Fifth Circuit concluded that the District Court had lacked habeas jurisdiction. This would create a new injustice. One which, it is submitted, would, in fact, be cognizable in habeas corpus.**

---

[16]    Ironically, Ms. Arreguin also had one prior arrest, for a far more serious offense, to wit, smuggling aliens for gain, but prosecution had been declined. *Id.,* Slip Opinion at 7.

19

## IV.  CONCLUSION

Notably, INS does not argue that the Board lacked jurisdiction to dismiss INS' appeal, and restore Mr. Toscano's grant of relief. Regardless of whether the time limitations of 8 C.F.R. §3.2(c)(2) would bar Mr. Toscano from bringing a motion to reopen, or reconsider, based on the findings of the District Court, there is no such restriction on the power of the Board to do so, *sua sponte,* under exceptional circumstances. *See, Matter of Beckford*, I.D. 3425 (BIA 2000). The case at bar presents just such a scenario.

Mr. Toscano was granted relief by the Immigration Judge. In a two-to-one decision, the Board (erroneously) reversed that grant of relief. In habeas corpus, the District Court made a number of findings of fact, regarding the errors committed by the Board. No-one has ever disputed those errors. The Fifth Circuit reversed the District Court, solely on jurisdictional grounds. Now the Board has agreed with the **merits** of the District Court's findings, and restored Mr. Toscano's grant of relief. It would be unconscionable, and violate Due Process, to again reverse that grant, solely on the basis that the Fifth Circuit concluded that the District Court lacked jurisdiction over his initial petition.

WHEREFORE, it is urged that INS' motion to reconsider be denied.

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

20

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first class postage prepaid, to the Office of INS District Counsel, P.O. Box 1711, Harlingen, Texas, 78551, this 9th day of February, 2002.





21

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

TYPE OF PROCEEDING:

☐ Deportation    ☐ Bond Redetermination    ☐ Disciplinary
☐ Removal        ☐ Motion to Reopen Reconsider
☒ Exclusion      ☐ Rescission

DATE  2/9/02

ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)

A 91 229 835

I hereby enter my appearance as attorney or representative for, and at the request of the following named person(s):

NAME (First)   (Middle Initial)   (Last)

Islas   Toscano - Gil

ADDRESS (Number & Street)   (Apt. No.)   (City)   (State)   (Zip Code)

Please check one of the following

☒ 1   I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia.

Name(s) of Court(s)                              State Bar No. (if applicable)

Texas                                            030 52800

(Please use space on reverse side to list additional jurisdictions.)

☒ I am (am not ☐) [am] explain fully on reverse side) subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed [above comprise] all of the jurisdictions other than federal courts where I am licensed to practice law.   *currently

☐ 2   I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization)

☐ 3   I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 CFR § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNATURE OF ATTORNEY OR REPRESENTATIVE   EOIR ID#   TELEPHONE NUMBER (Include Area Code)   DATE:

NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT)   ADDRESS   ☐ Check here if this is a new address
Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

Certificate of Service

I, Lisa Brodyaga, mailed or delivered a copy of the foregoing on 2/9/03 to the Immigration
Name                                                                (Date)

and Notice of Service at PO Box 1711 Harlingen Tx 78551
(Address)

OMB# 1125-0005                                    Signature of Attorney or Representative   FORM EOIR 27
                                                                                          August 99

(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)

LISA M. PUTNAM
ASSISTANT DISTRICT COUNSEL

HARLINGEN DISTRICT OFFICE
P.O. BOX 1711
HARLINGEN, TEXAS 78551

**NOT DETAINED**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

IN THE MATTER OF:              )
                              )
ISAIAS TOSCANO-GIL           )     FILE NO. A91 229 833
                              )
IN EXCLUSION PROCEEDINGS     )
_____)

MOTION TO ACCEPT REPLY BRIEF

<u>CERTIFICATE OF SERVICE</u>

I, _____, Legal Assistant, hereby certify that a true copy of the foregoing Motion to Accept Reply Brief as served upon the respondent or counsel for respondent by depositing the same in the United States mail, postage prepaid, addressed to:

    Lisa S. Brodyaga, Esquire
    Refugio Del Rio Grande
    17891 Landrum Park Rd.
    San Benito, TX 78586

on this ____8____ day of ___March_____, 2002.


Legal Assistant
Immigration & Naturalization Service

LISA M. PUTNAM
ASSISTANT DISTRICT COUNSEL
HARLINGEN DISTRICT OFFICE          **NOT DETAINED**
P.O. BOX 1711
HARLINGEN, TEXAS  78551


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA


IN THE MATTER OF:              )
                              )
ISAIAS TOSCANO-GIL            )    FILE NO. A91 229 833
                              )
IN EXCLUSION PROCEEDINGS      )
——————————————————————————)

EXHIBIT 5


REPLY BRIEF TO RESPONDENT'S OPPOSITION
TO INS' MOTION TO RECONSIDER

The Immigration and Naturalization Service ("Service") objects to the respondent's lengthy opposition to the Service's motion to reconsider because it makes additional arguments not relevant to the issues raised in the Service's motion to reconsider and attempts to present additional evidence to support a grant of relief pursuant to §212(c) of the Immigration and Nationality Act ("Act"). The respondent should not be permitted to reargue and augment his position regarding the merits of his case, particularly in light of the fact that he has already had several opportunities to do so.

The Service's motion to reconsider the Board of Immigration Appeal's ("Board") decision of December 21, 2001, is based simply on the Board's erroneous reliance on a decision by the United States District Court for the Southern District Court, Brownsville Division that had been reversed by the Fifth Circuit Court of Appeals 20 months earlier. In reversing the District Court's order, the Fifth Circuit essentially reinstated the Board's May 19, 1998, decision which sustained the Service's appeal and ordered the applicant excluded and deported from the United States.

The fact that the Board may have addressed the merits of the case in the incorrectly issued December 21, 2001, decision is irrelevant. The Board evaluated the facts and applicable law when making its decision on May 19, 1998. Appeals and habeas petitions were filed and ruled upon. In the end, the Fifth Circuit

determined that the Board's decision of May 19, 1998, should remain undisturbed.  Evaluation of any evidence on the merits should not be permitted.

The Board should disregard the respondent's opposition to the Service's motion to reconsider as it is irrelevant for the aforementioned reasons.  The Service continues to urge its motion to reconsider on the grounds stated therein.

Respectfully Submitted,

Lisa M. Putnam
Assistant District Counsel
Immigration and Naturalization Service
P.O. Box 1711
Harlingen, Texas  78551

3

<u>CERTIFICATE OF SERVICE</u>

I, _*(signature)*_____, Legal Assistant, hereby

certify that a true copy of the foregoing Reply Brief to

Respondent's Opposition to INS' Motion to Reconsider as served upon

the respondent or counsel for respondent by depositing the same in

the United States mail, postage prepaid, addressed to:

> Lisa S. Brodyaga, Esquire
> Refugio Del Rio Grande
> 17891 Landrum Park Rd.
> San Benito, TX  78586

on this ___8___ day of _March_____, 2002.


_*(signature)*_____
Legal Assistant
Immigration & Naturalization Service

4

**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

In re
   ISAIAS TOSCANO-GIL,
   A91 229 833

**RESPONDENT'S OPPOSITION TO INS' MOTION TO ACCEPT REPLY BRIEF,**
**AND TO INS' REQUEST THAT THE BOARD "DISREGARD" RESPONDENT'S**
**OPPOSITION TO INS' MOTION TO RECONSIDER**

INS' Motion To Accept Reply Brief is premised on an allegation of
"surprise." But if INS was surprised by Respondent's opposition to
its motion to reconsider, that surprise can be attributed solely to
INS' incorrect analysis of the Board's decision of December 21,
2001. As the Service stated in its motion:

> [T]his reply brief... is premised upon and asserts
> surprise to the respondents' recent filing of his
> opposition to the Service's motion to reconsider. The
> respondent presents additional evidence [1] and again
> argues the merits of his case. This is impermissible in
> light of the fact that the Fifth Circuit Court of Appeals
> virtually reinstated the Board's decision of May 19,
> 1998.

---

[1] Both in the motion for leave to file, and the accompanying
opposition, INS asserts that Mr. Toscano presented additional
evidence. *See also,* "Reply Brief To Respondent's Opposition to INS'
Motion To Reconsider," at page 2:

> The [INS] objects to the respondent's lengthy opposition
> to the Service's motion to reconsider because it makes
> additional arguments not relevant to the issues raised in
> the Service's motion to reconsider and attempts to
> present additional evidence to support a grant of relief
> pursuant to §212(c) of [the Act].

This is simply incorrect. Mr. Toscano submitted no additional
evidence in support of the Board's decision granting §212(c)
relief. Nor did he "make[] additional arguments not relevant to
the issues raised" in INS' motion. Rather, he pointed out the flaw
in that motion, to wit, INS' apparent belief that the Board's grant
of relief was based on a mistaken understanding that it was
compelled to do so by the District Court Order. To the contrary,
in its decision of December 21, 2001, the Board granted relief on
the merits, based on its own independent review of the record.

> The ground for the motion to reconsider was based solely
> on the Board's incorrect reliance on a decision of the
> United States District Court that had been reversed by
> the Fifth Circuit Court of Appeals.  The Board's May 19,
> 1998 decision has been reinstated and there is no need to
> reexamine any new evidence or revisit the respondent's
> arguments.

This fundamentally misrepresents both the nature of the Board's
decision of December 21, 2001, and of Mr. Toscano's opposition to
INS' motion.  In that decision, the Board reversed itself, on the
basis of the following findings, and reasoning (emphasis added):

> ... The [district] court found that the Board had not
> adequately or correctly assessed the facts of the case,
> and had not considered the Immigration Judge's finding
> with regard to rehabilitation.

> In light of the court's findings, **and upon further review
> of the record, we conclude that there is no adequate
> basis for overturning the Immigration Judge's decision
> granting discretionary relief**.  We note in particular the
> respondent's very long residence in this country, and the
> fact that he has only one conviction, and was sentenced
> only to probation for that offense.

INS now seeks reconsideration of this decision.  Notably, even in
its current pleadings, INS neither disputes the **merits** of the
Board's reasoning, nor argues that the Fifth Circuit reversed, or
disapproved, of any of the factual findings of the District Court.

INS does not dispute that the Board's prior decision was in error,
and the relief granted should not have been rescinded.  But because
the Fifth Circuit found that the District Court lacked jurisdiction
over the case, INS urges that the otherwise meritorious grant of
§212(c) relief again be taken away.  INS does not dispute that this
would work a miscarriage of justice, to Mr. Toscano and to his wife
and children, in whose cases INS' appeals from the Immigration
Judge's grant of adjustment of status are still pending.  Rather,
in its opposition, at page 3, INS argues as follows:

2

ı

The fact that the Board may have addressed the merits of the case in the incorrectly issued December 21, 2001, decision is irrelevant.  The Board evaluated the facts and applicable law when making its decision on May 19, 1998.  Appeals and habeas petitions were filed and ruled upon.  In the end, the Fifth Circuit determined that the Board's decision of May 19, 1998 should remain undisturbed.  Evaluation of any evidence on the merits should not be permitted. [2]

The Board should disregard the respondent's opposition to the Service's motion to reconsider as it is irrelevant for the aforementioned reasons. [3]  The Service continues to urge its motion to reconsider on the grounds stated therein.

This fundamentally mis-perceives the nature of the Fifth Circuit's decision.  The Court did **not** hold that in its decision of May 19, 1998, the Board rightly vacated the Immigration Judge's grant of relief.  Rather, the Court concluded that the errors committed therein did not rise to the level of "Due Process" violations.  The existence and nature of those errors was never seriously disputed, either in District Court, or before the Fifth Circuit.  *See*,

---

[2]   It is unclear whether INS is asserting that it is impermissible for the Board to re-evaluate the evidence on its own motion, or that it is impermissible for Respondent to urge that the Board properly re-evaluated the evidence, and rightly concluded that there had been insufficient basis for overturning the Immigration Judge's grant of relief.  However, neither assertion would be correct.  As previously noted, the Board always has the power to reconsider a prior decision on its own initiative.  8 C.F.R. §3.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision").  And where the Board has done so, and INS is requesting that the BIA again reverse itself, a respondent also has the right to defend the Board's action, in the face of an INS motion to reconsider.

[3]   INS cites no authority for the proposition that in opposing INS' motion to reconsider, Respondent cannot discuss flaws in INS' reasoning, even if this means addressing aspects of the decision at issue which INS had not discussed:  to wit, the fact that the decision granted relief **on the merits**, and not because it read the District Court Order as requiring that relief be granted.  No such authority is presented, it is submitted, because none exists.

3

*Toscano-Gil v. Trominski*, 210 F.3d 470, 473 (5th Cir. 2000):

> These claims, according to the Government, are the type
> properly reviewed for abuse of discretion, not for denial
> of due process.   In support, it cites several Supreme
> Court cases.   E.g., Immigration & Naturalization Serv.
> v. Yang, 519 U.S. 26, 32, 117 S.Ct. 350, 136 L.Ed.2d 288
> (1996) ("irrational departure" from "general policy"
> governing exercise of administrative discretion "could
> constitute ... an abuse of discretion")

Now, the Board has re-examined its decision, in light of these
undisputed errors, (as pointed out in the decision of the District
Court), [4] and concluded that there was not, in fact, sufficient
basis for vacating the grant of relief by the Immigration Judge.

Yet INS argues that this conclusion is "irrelevant" because the
Fifth Circuit held that they did not rise to the level of a Due
Process violation.   In his opposition to INS' motion to reconsider,
Mr. Toscano presented the issue as follows:

> WHERE THE BOARD HAS FOUND THAT ITS PRIOR DECISION WAS IN
> ERROR, AND CONCLUDED THAT THERE WAS "NO ADEQUATE BASIS
> FOR OVERTURNING THE IMMIGRATION JUDGE'S GRANT OF
> DISCRETIONARY RELIEF," IT WOULD WORK A MISCARRIAGE OF
> JUSTICE, AND VIOLATE DUE PROCESS, TO AGAIN REVOKE THE
> GRANT OF §212(c) RELIEF, SIMPLY BECAUSE THE FIFTH CIRCUIT
> CONCLUDED THAT THE DISTRICT COURT HAD IMPROPERLY
> EXERCISED JURISDICTION OVER THE BOARD'S INITIAL DECISION,
> AND MOST PARTICULARLY WHERE THAT CONCLUSION HAS BEEN
> CALLED INTO DOUBT BY LATER DEVELOPMENTS, INCLUDING *INS v.*
> *ST. CYR*, 121 S.Ct. 2271 (2001).

INS has not contested this claim on the merits.   Rather, the

---

[4]   To wit, the Board's factual error in characterizing Mr.
Toscano's DWI arrest as a conviction, its failure to even mention,
let alone discuss, the finding of the Immigration Judge that he had
demonstrated rehabilitation, the failure to consider the equities
cumulatively, rather than individually, and disregard of its own
precedent, in finding that his lengthy residence in the U.S. was
not an unusual or outstanding equity.

Service is requesting that the Board:

> disregard the respondent's opposition to the Service's
> motion to reconsider as it is irrelevant ...

It is submitted that the fact that granting the Service's motion
would create a miscarriage of justice is not "irrelevant" to the
exercise of the Board's authority to reconsider a decision on its
own initiative, under 8 C.F.R. §3.2(a), and such decisions as
*Matter of Beckford,* Int. Dec. 3425 (BIA 2000).  To the contrary, a
showing that the result would likely be different if proceedings
were reopened, (or, as in this case, if the decision were
reconsidered), was held therein to be precisely the type of
"exceptional circumstance" warranting such action.

Here, the Board has reached just such a conclusion.  Based on its
own "further review of the record" the Board has acknowledged that
Mr. Toscano deserved discretionary relief, and has granted said
relief. Under *Beckford*, this is an entirely appropriate use of the
Board's power to reopen, or reconsider, on its own initiative.

Yet INS would have the Board reconsider its reconsideration, **not
because it was erroneous, on the merits, but solely because the
District Court decision which prompted this action had been vacated
because Fifth Circuit concluded that the Court had lacked habeas
jurisdiction.  This would create a new injustice.  One which, it is
submitted, would, in fact, be cognizable in habeas corpus.**

Notably, INS has not contested Mr. Toscano's assertion that, under
8 C.F.R. §3.2(a) and *Beckford*, the Board did, indeed, have
jurisdiction to revisit the case, dismiss INS' appeal, and restore
the Immigration Judge's grant of §212(c) relief.  Indeed, INS has
not even disputed Mr. Toscano's contention that his case presents
just such a scenario.

5

Mr. Toscano was granted relief by the Immigration Judge. In a two-to-one decision, the Board (erroneously) reversed that grant of relief. In habeas corpus, the District Court made a number of findings of fact, regarding the errors committed by the Board. No-one has ever disputed those errors. The Fifth Circuit reversed the District Court, solely on jurisdictional grounds. Now the Board has agreed with the **merits** of the District Court's findings, and restored Mr. Toscano's grant of relief. It would be unconscionable, and violate Due Process, to again reverse that grant, solely on the basis that the Fifth Circuit concluded that the District Court lacked jurisdiction over his initial petition.

WHEREFORE, it is urged that the Board deny INS' request for leave to file a reply to Mr. Toscano's Opposition to the Service's motion to reconsider, which reply urges that the Board "disregard the respondent's opposition to the Service's motion to reconsider."

It is further urged that INS' motion to reconsider be denied.

Respectfully Submitted,

Lisa S. Brodyaga, Esq.
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first class postage prepaid, to the Office of INS District Counsel, P.O. Box 1711, Harlingen, Texas, 78551, this 9th day of March, 2002.

6

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A91 229 833 - Port Isabel

Date:   APR 22 2002

In re: ISAIAS TOSCANO-GIL

IN EXCLUSION PROCEEDINGS

MOTION

ON BEHALF OF APPLICANT:   Thelma O. Garcia Esquire

ON BEHALF OF SERVICE:     Lisa M. Putnam
                          Assistant District Counsel

APPLICATION:  Reconsideration

This case was originally before the Board as the result of an appeal filed by the Immigration and Naturalization Service regarding the Immigration Judge's grant of a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), to the applicant on January 24, 1997. On May 19, 1998, the Board sustained the Service's appeal, vacated the Immigration Judge's grant of relief, and ordered the applicant excluded and deported from the United States. Subsequently, on December 4, 1998, the United States District Court for the Southern District of Texas granted the applicant's petition for habeas corpus, vacated the Board's decision, and remanded the matter for further proceedings.

On remand, we reexamined the record in light of the district court's findings and dismissed the Service's original appeal from the Immigration Judge's January 24, 1997, grant of section 212(c) relief. The Service has now timely filed a motion to reconsider based upon the subsequent reversal of the district court's grant of habeas corpus. See Toscano-Gil v. E.M. Trominski, 210 F.3d 470 (5th Cir. 2000).

In light of the Fifth Circuit's decision, we will grant the Service's motion to reconsider and reinstate our May 19, 1998, decision.

Accordingly, the following orders will be entered.

ORDER: The Immigration and Naturalization Service's motion to reconsider is granted.

FURTHER ORDER: The Board of Immigration Appeal's decision dated May 19, 1998, is reinstated, and the applicant is ordered excluded and deported from the United States.

FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISAIAS TOSCANO-GIL,                |
                                   |
v.                                 |        CA B-02-084
                                   |
E.M. TROMINSKI,                    |
  INS DISTRICT DIRECTOR.           |
_____

EXHIBIT "F" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
WITH INCORPORATED POINTS AND AUTHORITIES

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Harlingen, Texas

File No.: A 76 228 477                              July 7, 1999
         A 76 228 474
         A 76 228 273
         A 76 228 475
         A 76 228 476

ISAIS GUADALUPE TOSCANO-MONTEMAYOR, )   IN DEPORTATION PROCEEDINGS
ODELIA TOSCANO-MONTEMAYOR          )
ODELIA MONTEMAYOR TOSCANO          )
ISAIL TOSCANA-MONTEMAYOR           )
ISAIUL TOSCANA-MONTEMAYOR          )
         Respondents              )     Transcript of Hearing


CHARGE:        Deportability Section 241(a)(1)(B), Immigration
               Nationality Act - entry without inspection


APPLICATIONS:  Section 245(i), Immigration Nationality Act -
               adjustment of status; Section 244(e), Immigration
               Nationality Act - voluntary departure


ON BEHALF OF RESPONDENTS:          ON BEHALF OF SERVICE:

Thelma O. Garcia, Attorney         Shirley Jones, Attorney
301 East Madison                   Immigration and Naturalization
Harlingen, Texas 78550             Service
                                   P.O. Box 1711
                                   Harlingen, Texas 78551


                 ORAL DECISION OF THE IMMIGRATION JUDGE

        The respondents are a family unit consisting of the mother,

and four children.  They are all natives and citizens of Mexico

who entered the United States without being inspected by an

Immigration Officer.  Assisted by counsel, they admitted the

allegations of fact and conceded deportability as charged.  The

respondents designated Mexico for deportation should that become

necessary.  The respondents have filed an application for

DB

adjustment status under Section 245(i) of the Act.  For our
purposes, the issue of deportability is uncontested and this
Court finds that deportability had been established by their
admissions.  The evidence is clear, convincing and unequivocal
that each respondent is subject to deportation as charged.

The Court finds, and the Immigration Service has stipulated
that the respondents are all qualified for Section 245(i) of the
Immigration and Nationality Act save and except for the issue of
whether or not the petition is still a valid petition in light of
the fact that the petitioners status in the United States is
questionable.  The petitioner is the spouse and father of the
respondents.  The only issue in essence before the Court is
whether or not Isais Toscano Gill, petitioner of the I-130, can
confer an immigration benefit upon the respondents herein.  The
Court finds that when there is a final administrative decision
terminating the status of a petitioner that he can no longer
confer an immigration benefit upon another person or persons.  In
the case at bar, the petitioner Isais Toscano Gill had filed a I-
130 petition on behalf of each of the respondents which was
approved by the Immigration and Naturalization Service.  The
petitioner was placed in exclusion proceedings.  He admitted that
he was subject to being excluded from the United States on the
charge that an Immigration officer had reason to believe that he
was a trafficker in a controlled substance.  The issue of whether
or not he was subject to the exclusion ground was not contested.

A 76 228 477                    2                    July 7, 1999

DB

The petitioner filed an application for a waiver of the ground of excludability pursuant to Section 212(c) of the Act. That same relief was granted by another Immigration Judge. The Immigration and Naturalization Service subsequently appealed the decision that the Immigration Judge. The Board of Immigration Appeals reversed the grant of the 212(c) relief. The petitioner, assisted by counsel, sought judicial review by and through a petition for writ of habeas corpus. The United States District Court for the Southern District of Texas, Brownsville division, in a denoval review of the entire record, vacated the decision of the Board and remanded the case to the Board of Immigration Appeals for further review. The Immigration and Naturalization Service took an appeal to the 5th Circuit of the District Court's decision. There was no petition to stay. The effects of the memorandum and order (See Exhibit 2). As it stands, the case of the petitioner Isais Toscano Gill has been remanded to the Board of Immigration Appeals.

The Immigration and Naturalization Service strongly argues that because the petitioner has not contested the issue of his excludability that a final decision on his status on that issue has occurred the only issue before the Board of Immigration Appeals was the grant of relief. Thus the Immigration Service concludes that for all purposes, the status of a lawful permanent resident had been terminated. The Court finds otherwise. When the petitioner admitted his excludability, that in and of itself,

A 76 228 477                        3                      July 7, 1999

DB

did not terminate his status as a lawful permanent resident.  The
Court took into consideration a waiver of his excludability and
the waiver was granted, although appealed to the Board of
Immigration Appeals.  The decision has not become
administratively final on whether or not the waiver should be
granted.  This does not mean that because he admitted his
excludability that his status as a lawful permanent resident has
been terminated.  Unlike a person who is found deportable for an
offense for which there is no waiver and subsequently seeks an
adjustment of status under Section 245 of the Act, the petitioner
in the case at bar did not commit an offense for which a waiver
was not available and because a waiver was available, that in and
of itself did not terminate his status.  By further analogy when
a waiver is granted on a 212(c) application, the status of lawful
permanent residence goes back to the original date, not to the
new date when the waiver is granted for the purposes of
accumulation of time should naturalization ever become an issue.
In adjustment cases after a lawful permanent residence status is
terminated, the accumulation of time commences upon the new grant
of residence through adjustment of status.  Thus, the Court finds
that the petitioner, Isais Toscano Gill continued with his status
as a lawful permanent resident and that his status has not been
terminated and his case is still pending before the Board of
Immigration Appeals.  Because, the case is still pending before
the Board of Immigration Appeals, this Court finds that at the

A 76 228 477                    4                    July 7, 1999

DB

time that it is considering the application for adjustment of status that the petitioner can confer benefits upon the respondents presently before the Court.  There being no contested issue with reference to their otherwise eligibility for Section 245(i), the Court finds that such relief should be granted to each of the respondents.

<u>ORDER</u>

IT IS THE ORDER of the Court that the above named respondents be granted relief pursuant to Section 245(i) of the Act.

Dated this 7th day of July, 1999.

_____
DAVID AYALA
Immigration Judge